| | | |
|---|---|---|
| JOAN M. COCO, Administrator of the<br>ESTATE OF ANTHONY S. COCO | : | JUDICIAL DISTRICT OF NEW HAVEN |
| VS. | : | AT NEW HAVEN |
| YALE NEW HAVEN HEALTH SERVICES<br>CORPORATION, JAMES J. YUN, M.D., Ph.D.,<br>and MARK R. SPARAPANI | :<br>: | JANUARY 24, 2018 |

## COMPLAINT

**FIRST COUNT:**

1. At all times relevant to this action, the defendant, James J. Yun, M.D., Ph.D. was a physician licensed to practice medicine in the State of Connecticut, with a specialty in cardio-thoracic surgery.

2. The plaintiff's decedent, Anthony S. Coco was an 81-year old man, with symptoms of angina, dyspnea on exertion and syncope, with a diagnosis of aortic stenosis and aortic insufficiency. On February 2, 2016, Mr. Coco was admitted to the West Haven, Connecticut campus of the Veterans Administration Connecticut Healthcare System by the defendant, James Yun, for said conditions.

3. On February 4, 2016, the defendant Yun performed an aortic valve replacement and coronary artery bypass grafting on his patient Anthony Coco.

4. At all times relevant to this action, the defendant Yun was acting as an agent, servant, and/or employee of the defendant, Yale New Haven Health Services Corporation.

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

5. At all times relevant to this action, the other members of the surgical team, including residents and perfusionists, were agents, servants and/or employees of the defendant Yale New Haven Health Services Corporation.

6. During the course of the aforementioned surgery, a "large volume of air bubbles" from the arterial limb of the cardiopulmonary bypass circuit entered Mr. Coco's heart, resulting in bilateral cerebral infarcts and cerebral edema, ultimately causing Mr. Coco's death on February 7, 2016.

7. The defendant Yun and/or the surgical residents under Dr. Yun's supervision all of whom were involved in the care and treatment of Anthony Coco, fell below the acceptable standard of care, as would be reasonably expected of similar healthcare providers, in one or more of the following respects:

   a. In that he/they failed to properly cut the ends of the tubing that was handed to them by the perfusionist and then failed to safely connect those ends to the appropriate cannula, thereby allowing air to enter the tubing; and

   b. In that he/they failed to notice the "large volume of air bubbles" located in the arterial line in a timely manner and, as a result, failed to timely intervene in order to prevent the air from entering Mr. Coco's heart.

8. The defendant Yun also failed to meet the applicable standard of care, after it was discovered that air had entered Mr. Coco's heart, in that he failed to perform the following standard emergency measures designed to minimize the risk of an air embolism traveling to his patient's brain:

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

a. In that he failed to place Mr. Coco in the Trendelenburg position;

b. In that he failed to remove Mr. Coco from cardiopulmonary bypass, clamp both arterial and venous lines, recirculate all air in the reservoir and bubble trap of the cardiopulmonary bypass machine;

c. In that he failed to aspirate all air at the site of the arterial cannula in the aorta;

d. In that he failed to resume cardiopulmonary bypass and cool Mr. Coco to deep hypothermia (20 degrees Celsius) to protect his brain and other organs;

e. In that he failed to start retrograde cerebral perfusion to flush all the air from Mr. Coco's brain and aspirate all of the air from the arterial cannula with Mr. Coco in the deep Trendelenburg position;

f. In that he failed to administer steroids;

g. In that he failed to cross clamp the aorta and continue the operation, using near infrared spectroscopy to monitor cerebral oximetry and maintain arterial line mean arterial pressure over 70 to 80 mmHg; and

h. In that he failed to consider hyperbaric oxygenation within five (5) hours of the operation.

9. As a result of said incident, the plaintiff's decedent sustained severe, painful and permanent injuries. He sustained a severe shock to his nervous system, air in both the left atrium and left ventricle of his heart which travelled to the brain causing acute, bilateral cerebral infarcts and cerebral edema, resulting in his death. Prior to his death, Mr. Coco experienced pain and suffering.

10. As a result of the death of Anthony Coco, his estate was forced to incur expenses for his funeral and burial.

11. As a further result of his death, Anthony Coco suffered a permanent loss of his ability to carry out and enjoy all of life's activities and pleasures.

12. On November 2, 2016, the plaintiff Joan M. Coco was appointed Administrator of the Estate of Anthony S. Coco and has been duly qualified by the Surrogates' Court of the State of New York, Fulton County, and is acting as such.

## SECOND COUNT:

1. At all times relevant to this action, the defendant, Mark R. Sparapani, was a clinical perfusionist licensed to practice in the State of Connecticut.

2. The plaintiff's decedent, Anthony Coco was an 81-year old man, with symptoms of angina, dyspnea on exertion and syncope, with a diagnosis of aortic stenosis and aortic insufficiency. On February 2, 2016, Mr. Coco was admitted to the West Haven, Connecticut campus of the Veterans Administration Connecticut Healthcare System by the defendant, James Yun, for said conditions.

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

3. On February 4, 2016, the defendant Yun performed an aortic valve replacement and coronary artery bypass grafting on his patient Anthony Coco. The defendant Sparapani was the perfusionist responsible for the operation of the cardiopulmonary bypass machine during said procedure.

4. At all times relevant to this action, the defendant Sparapani was acting as the agent, servant, and/or employee of the defendant Yale New Haven Health Services Corporation.

5. During the course of the aforementioned surgery, a large volume of air bubbles from the arterial limb of the cardiopulmonary bypass circuit entered Mr. Coco's heart, resulting in bilateral cerebral infarcts and cerebral edema, ultimately causing Mr. Coco's death on February 7, 2016.

6. The defendant Sparapani fell below the acceptable standard of care as would be reasonably expected of similar healthcare providers, in one or more of the following respects:

   a. In that he failed to adequately and timely prevent, assess, monitor, manage and otherwise intervene related to decreased blood levels in the reservoir/oxygenator of the cardiopulmonary bypass unit;

   b. In that he failed to maintain adequate bypass alarms that would alert when the blood level became too low in the reservoir;

   c. In that he failed to maintain adequate alarms that would monitor and alert to air in the arterial line; and

   d. In that he failed to communicate these problems to the surgeon.

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

7. As a result of said incident, the plaintiff's decedent sustained severe, painful and permanent injuries. He sustained a severe shock to his nervous system, air in both the left atrium and left ventricle of his heart which travelled to the brain causing acute, bilateral cerebral infarcts and cerebral edema, resulting in his death. Prior to his death, Mr. Coco experienced pain and suffering.

8. As a result of the death of Anthony Coco, his estate was forced to incur expenses for his funeral and burial.

9. As a further result of his death, Anthony Coco suffered a permanent loss of his ability to carry out and enjoy all of life's activities and pleasures.

10. On November 2, 2016, the plaintiff Joan M. Coco was appointed Administrator of the Estate of Anthony S. Coco and has been duly qualified by the Surrogates' Court of the State of New York, Fulton County, and is acting as such.

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

**WHEREFORE**, the plaintiff claims money damages.

THE PLAINTIFF

By: _____
Bruce D. Jacobs
JACOBS & JACOBS, LLC
Her Attorneys

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of costs and interest, is in excess of FIFTEEN THOUSAND ($15,000.00) DOLLARS.

THE PLAINTIFF

By: _____
Bruce D. Jacobs

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

## **CERTIFICATE OF GOOD FAITH**

January 24, 2018

Pursuant to Connecticut General Statutes 52-190a, I hereby certify that, prior to the filing of the Complaint in this action, I made a reasonable inquiry, as permitted by the circumstances, to determine whether there were grounds for a good faith belief that there was negligence in the care or treatment of the claimant. Pursuant to the attached written and signed opinions of similar health care providers, this inquiry has given rise to a good faith belief on my part, that grounds exist for an action against the named defendants.

THE PLAINTIFF

BY: _____
Bruce D. Jacobs
JACOBS & JACOBS, LLC
Her Attorneys

JACOBS & JACOBS • ATTORNEYS AT LAW
700 STATE STREET • THIRD FLOOR • NEW HAVEN, CT 06511
(203) 777-2300 • JURIS NO. 432571

-9-

December 8, 2017

Bruce D. Jacobs, Esquire
JACOBS & JACOBS, LLC
700 State Street
New Haven, Connecticut 06511

Re: <u>ANTHONY S. COCO</u>

<u>**CERTIFICATE OF GOOD FAITH**</u>

This communication is considered attorney work product & is therefore not discoverable pursuant to CGS Sec, 52-190a, which allows prior reasonable & good faith inquiry in actions of negligence against health care providers.

Dear Attorney Jacobs:

I have reviewed the VA Connecticut Healthcare System's intraoperative surgical and cardiopulmonary bypass perfusion records of Anthony Coco's February 4, 2016 cardiac surgery with cardiopulmonary bypass.

Mr. Coco was an 81-year-old male with symptoms of angina, dyspnea on exertion and syncope. He was diagnosed with severe aortic stenosis and aortic insufficiency. On February 2, 2016, he was admitted to the West Haven Campus of the VA Connecticut Healthcare System by James Yun, M.D. On February 4, 2016, Mr. Coco underwent aortic valve replacement and coronary artery bypass grafting X 1. Partial cardiopulmonary bypass was started to facilitate retrograde cardioplegia catheter placement. During initiation of cardiopulmonary bypass, the surgeon and/or resident noticed an unexpected large volume of air bubbles in the arterial limb of the cardiopulmonary circuit.

The operative report states that an intraoperative transesophageal echocardiogram revealed air in both the left atrium and left ventricle and that the surgeon and/or surgical resident clamped the arterial line and suctioned as much air and blood as possible from the Luer lock of the arterial cannula. The aortic valve replacement and coronary artery bypass were then performed.

Mr. Coco was unresponsive in the postoperative period. He suffered worsening bilateral cerebral infarcts with increasing cerebral edema which were confirmed by a subsequent head CT scan. Mr. Coco died on February 7, 2016.

It is my expert opinion, assuming that the cardiopulmonary bypass machine was working properly and the perfusionist complied with the applicable standard of care, that the surgeon and/or surgical residents likely failed to meet the standard of care in one or more of the following ways, in that they;

1. Failed to properly cut the ends of the tubing that was handed to them by the perfusionist, and then failed to safely connect those ends to the appropriate cannula thereby allowing air to enter the tubing; and

2. Failed to notice the "large volume of air bubbles" located in the arterial line in a timely manner and therefore failed to timely intervene in order to prevent the air from reaching Mr. Coco's heart

After observing air enter the patient's heart, the surgeon failed to exercise the level of skill, training, experience and clinical judgement as was required by the standard of care in that he failed to initiate standard emergency measures in order to minimize the risk of air embolism traveling to the plaintiff's brain and causing an embolic stroke. He failed to:

1. Place Mr. Coco in the Trendelenburg position;

2. Remove Mr. Coco from cardiopulmonary bypass, clamp both arterial and venous lines, recirculate all air in the reservoir and bubble trap of the cardiopulmonary bypass machine.

3. Aspirate all air at the site of the arterial cannula in the aorta

4. Resume the cardiopulmonary bypass and cool to deep hypothermia (20 degrees Celsius) to protect the brain and the other organs.

5. Start retrograde cerebral perfusion to flush all the air from the brain and aspirate all of the air from the arterial cannula with the patient in deep Trendelenburg position;

6. Administer steroids

7. Cross clamp the aorta and continue the operation, using near infrared spectroscopy to monitor cerebral oximetry and maintain arterial line mean arterial pressure over 70 to 80 mmHg; and

8. Consider hyperbaric oxygenation within 5 hours of the operation.

I can conclude that, to a reasonable degree of medical probability, there are deviations from the applicable standard of care pertaining to the care and treatment of Mr. Coco that was provided by the defendants, and that the care and treatment provided by them was not provided in a manner consistent with the standard of care that existed among surgeons at the time of the February 4, 2016 surgery.

I am a licensed physician with board certifications in General Surgery and Thoracic and Cardiac Surgery and have expertise in the standards of care and treatment of patients undergoing aortic valve replacement and coronary artery bypass grafting under cardiopulmonary bypass in the United States now and those standards that were in effect at all times relevant to this matter. Given my experience and familiarity with cardiopulmonary bypass procedures using the heart-lung machine and review of the Anthony Coco's medical records, the entrapment of a "large volume of air bubbles" in the arterial line of the cardiopulmonary bypass circuit is not a recognized risk of the procedure and is highly unlikely to have occurred but for a breach of the standard of care on the part of either the perfusionist and or the surgeon or surgical residents. The plaintiff's records do not reveal an explanation for this injury that does not involve negligence on the part of the perfusionist and or the surgeon or surgical residents.

This is a preliminary opinion in this case to satisfy the good faith certificate requirement under Connecticut General Statutes 52-190a. I understand that the Statute provides that this written opinion "...*shall not be subject to discovery by any party except for questioning the validity of the certificate.*" I understand that a copy of this opinion, with my name and signature expunged, will be attached to the good faith certificate filed with the complaint and if a lawsuit if filed.

Sincerely,

December 8, 2017

Bruce D. Jacobs, Esquire
JACOBS & JACOBS, LLC
700 State Street
New Haven, Connecticut 06511

Re: **ANTHONY S. COCO**

## CERTIFICATE OF GOOD FAITH

This communication is considered attorney work product & is therefore not discoverable pursuant to CGS Sec, 52-190a, which allows prior reasonable & good faith inquiry in actions of negligence against health care providers.

Dear Attorney Jacobs:

I have reviewed the VA Connecticut Healthcare System's intraoperative surgical and cardiopulmonary bypass perfusion records of Anthony Coco's February 4, 2016 cardiac surgery with cardiopulmonary bypass.

On February 2, 2016, Anthony Coco, an 81-year-old male, was admitted to the West Haven Campus of the VA Connecticut Healthcare System by James Yun, M.D., for aortic valve replacement and coronary artery bypass grafting. During the February 4, 2016 procedure, Mr. Coco was placed on partial cardiopulmonary bypass to facilitate placement of a retrograde catheter with 2.0 liter/minute flow. During initiation of cardiopulmonary bypass, the surgeon and/or surgical resident noticed an unexpected swift entry of air into the arterial limb of the cardiopulmonary circuit.

The perfusionist's record does not indicate that anything abnormal occurred during their portion of the bypass function.

It is my professional and expert opinion, assuming that the cardiopulmonary bypass machine was working properly, and the surgeon and the surgical residents complied with the standard of care, that the perfusionist likely failed to meet the applicable standard of care in one or more of the following ways in that he;

1. Failed to adequately and timely prevent, assess, monitor, manage and otherwise intervene related to decreased blood levels in the reservoir/oxygenator of the cardiopulmonary bypass unit;

2. Failed to maintain adequate bypass alarms that would alert when the blood level got too low in the reservoir;

3. Failed to maintain adequate alarms that would monitor and alert to air in the arterial line; and

4. Failed to communicate these problems to the surgeon.

"A large volume of air bubbles" in the arterial line of a properly functioning cardiopulmonary bypass circuit is not a recognized risk of the procedure and is highly unlikely to occur but for a breach of the standard of care on the part of the perfusionist and/or the surgeon or surgical residents. The plaintiff's medical records do not reveal an explanation that does not involve negligence on the part of the perfusionist and/or the surgeon or surgical residents. This opinion is based on my education, training, experience and expertise with the technique, function and operation of cardiopulmonary bypass machines, and on my review of Anthony Coco's medical records.

I am a clinical perfusionist certified by the American Board of Clinical Perfusionists, a medical technologist certified by the American Society of Clinical Pathologists and have a Master's of Science degree in Perfusion Sciences. I am also a member of the American Society for Extra-Corporeal Technology and have expertise in the care and treatment of patients undergoing cardiopulmonary bypass in the United States now and those in effect at all times relevant to this matter.

This is a preliminary opinion in this case to satisfy the good faith certificate requirement under Connecticut General Statutes 52-190a. I understand that the Statute provides that this written opinion "...*shall not be subject to discovery by any party except for questioning the validity of the certificate.*" I understand that a copy of this opinion, with my name and signature expunged, will be attached to the good faith certificate filed with the complaint and if a lawsuit if filed.

Sincerely,